UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

DWIGHT HALSTEAD, and BLOCK 28-29
REALTY CORP.,

                              Plaintiffs,

              v.

CITY OF NEW YORK, RAFAEL J. LUCAS,
JOSEPH PUCITO and LINDSAY EASON,
                              Defendants.

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**
13-CV-4874 (MKB)

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Dwight Halstead and Block 28-29 Realty Corp., commenced the above-captioned action pursuant to 42 U.S.C. § 1983 against Defendants City of New York, Rafael[1] J. Lucas, Joseph Pucito and Lindsay Eason, seeking injunctive relief, compensatory and punitive damages, and attorneys' fees. Plaintiffs allege that Defendants violated their substantive and procedural due process rights by failing to give them proper notice of the foreclosure sale of certain real property. Defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] For the reasons discussed below, the Court grants Defendants' motion to dismiss the Amended Complaint.

---

    [1] In their Amended Complaint, Plaintiffs incorrectly identify Defendant Lucas' first name as "Rapheal."

    [2] On February 27, 2014, Defendants filed a letter with the Court requesting a pre-motion conference to move to dismiss the action. (Docket Entry No. 9.) After filing an Amended Complaint on March 7, 2014, on March 10, 2014, Plaintiffs filed a letter in opposition to Defendants' request for a pre-motion conference. (Pl. Opp'n Ltr., Docket Entry No. 11.) At the pre-motion conference, which was attended by Plaintiffs' counsel, the Court established a briefing schedule for the motion. (Minute Entry Dated May 7, 2014.) Plaintiffs never responded to Defendants' motion to dismiss the Amended Complaint. (Def. Ltr. Aug. 5, 2014 (Docket Entry No. 16.)

## I. Background

### a. Facts alleged in the Amended Complaint

The facts alleged in the Amended Complaint are assumed to be true for the purposes of deciding Defendants' motion. Plaintiffs owned "land and property located at 781, 783, and 787 East 94th Street in Brooklyn, New York" (the "Property").[3] (Am. Compl. ¶ 6.) Defendants, the City of New York, and Sheriffs Lucas, Pucito and Eason, auctioned the Property without proper notice to Plaintiffs. (*Id.* ¶¶ 5, 8.) Lucas "falsely represented in an affidavit to the Kings County State Supreme Court" that he complied with the notice requirement by posting the required information in the United States Post Office located at 271 Cadman Plaza East in Brooklyn, New York. (*Id.* ¶ 9.) Pucito "falsely claimed in an affidavit in response [to] an order to show cause application" that Defendants complied with all the notice and procedure requirements for the auction of the Property. (*Id.* ¶ 12.) Eason "falsely executed a deed in favor [of] another person. (*Id.* ¶ 13.) Defendants "purported to record a new deed from the auction/sale on January 11, 2011." (*Id.* ¶ 14.) Plaintiffs learned of these "misdeeds" on or about July 12, 2013. (*Id.*)

### b. Documents relied on by Plaintiffs

Plaintiffs rely on several documents in bringing this action, including (1) affidavits filed in a state court proceeding, including affidavits of Lucas and Deputy Sheriff Jacob Itty, (2) the notice provided prior to the auction of the Property, and (3) the deed pursuant to which Defendants transferred ownership of the Property. (*Id.* ¶¶ 9, 12a, 12b,[4] 13.) Although Plaintiffs did not attach these documents to the Amended Complaint, the Court recognizes them as

---

[3] Although Plaintiffs list three building numbers, Plaintiffs refer to them as a singular property. The Court therefore does the same.

[4] As there are two paragraphs numbered "12" in the Amended Complaint, the Court will refer to them as "12a" and "12b."

documents incorporated by reference into, and integral to, the Amended Complaint.[5] In addition, because the state court proceeding referenced by Plaintiffs is a public record, and the determinations by the state court judge are integral to the Amended Complaint, the Court also takes judicial notice of the state court action and the decisions of the state court in deciding the motion to dismiss.[6]

According to these documents, on or about March 11, 2009, Plaintiffs commenced an action before Judge David Schmidt in New York State Supreme Court, Kings County, against Madeline Felice, (the "State Court Action") seeking a stay of the sale of the Property, "asserting various due process errors." (*Block 2829 Realty & Dwight Halstead v. Madeline Felice*, Index No. 5795-09 (N.Y. Sup. Ct.), annexed to Decl. of Margaret Devoe ("Devoe Decl.") as Exs. 5 and

---

[5] *See Nielsen v. Rabin*, 746 F.3d 58, 65 (2d Cir. 2014) (Jacobs, D. dissenting) ("[A] document that is relied on in a plaintiff's drafting of the complaint may be considered on a motion to dismiss."); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (documents attached to the complaint, those incorporated by reference, and those integral to the complaint can be considered on a motion to dismiss); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) ("[A] court may consider extrinsic documents where the complaint relies heavily upon its terms and effect" (citation and internal quotation marks omitted)); *Chambers v. Time Warner., Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (A document is "integral" to a complaint if it is "either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.").

[6] *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) ("[W]e may also look to public records, including complaints filed in state court, in deciding a motion to dismiss."); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (A court is permitted to take judicial notice of public records that are integral to the complaint "to determine what statements they contained" but does not take judicial notice "for the truth of the matters asserted."); *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) ("[T]he court may take judicial notice of public records and of 'admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action.'" (quoting *Harris v. N.Y. State Dep't of Health*, 202 F. Supp. 2d 143, 173 (S.D.N.Y. 2002))).

3

6, Ex. 6 at 3.)[7] Among the papers filed in the State Court Action was an affidavit by Deputy Sherriff Jacob Itty as to the notice procedures regarding the auction of the Property. (Aff. of Jacob Itty, annexed to Devoe Decl. as Ex. 7, ("Itty Aff.") 1).[8] Plaintiffs obtained a stay of the auction from the state court, but Plaintiffs did not timely serve the stay on Defendants. (October 15, 2010 State Court Decision 3–4.) On March 11, 2009, Defendants auctioned the Property. (*Id*. at 3.) Plaintiff Halstead appeared at the auction and bid $110,000 for the Property. (*Id*. at 4.) The Property was sold to Felice, the highest bidder. (*Id*. at 3.)

On June 9, 2009, Judge Schmidt issued the June 9, 2009 State Court Decision dismissing the state action brought by Plaintiffs and finding that Plaintiffs' "order to show cause was served in an untimely manner" after the auction had been completed. (June 9, 2009 State Court Decision 1.) Judge Schmidt also found that Block 2829 Realty participated in the auction by "placing a bid and thereby waiving any objection to said auction." (*Id*.) After finding that Felice was the successful bidder of the auction, Judge Schmidt ordered the Sheriff's office to "deliver a deed to Madeleine Felice, the successful bidder, forthwith." (*Id.*)

Plaintiffs subsequently moved to, among other things, vacate the June 9, 2009 State Court Decision, restore the action to the court's calendar, renew their opposition to the auction of the

---

[7] Judge Schmidt issued two related orders in the State Court Action. *See Block 2829 Realty & Dwight Halstead v. Madeline Felice*, Index No. 5795-09 (N.Y. Sup. Ct., June 9, 2009) (hereinafter, "June 9, 2009 State Court Decision") (granting motion to dismiss and ordering New York City Sheriff to deliver deed to Madeleine Felice); *Block 2829 Realty & Dwight Halstead v. Madeline Felice*, Index No. 5795-09 (N.Y. Sup. Ct., Oct. 15, 2010) (hereinafter, "October 15, 2010 State Court Decision") (adopting recommendations of appointed Referee including, *inter alia*, denying the plaintiff's motion to vacate the June 9, 2009 State Court Decision).

[8] In the Amended Complaint, Plaintiffs allege that the affidavit attesting to the dates the notices were posted was signed and notarized by Lucas. (Am. Compl. ¶ 9.) However, the affidavit Plaintiffs reference and rely on was signed by Deputy Sherriff Jacob Itty and notarized by Lucas. (Itty Aff. 1.)

Property, and prevent Felice from taking possession of the Property. (October 15, 2010 State Court Decision 2.) Plaintiffs' motions were denied. (*Id.* at 7.)

## II. Discussion

### a. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must take all of the factual allegations in the complaint as true." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N. Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678); *see also Pension Ben. Guar. Corp.*, 712 F.3d at 717–18. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Pension Ben. Guar. Corp.*, 712 F.3d at 718 (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### b. Plaintiffs' due process claims are time-barred

Defendants contend that Plaintiffs' claims are time-barred by the applicable statute of limitations because, on the date the Property was auctioned, Plaintiffs had notice of the alleged

injury. (Def. Mot. ¶¶ 3–4.) Plaintiffs assert that Defendants took the Property from Plaintiffs in violation of their substantive and procedural due process rights. (Am. Compl. ¶¶ 21–23.) Plaintiffs acknowledge that the deed was recorded on or about January 6, 2011, January 11, 2011, (Am. Compl. ¶ 10), or January 11, 2013, [9] (Pl. Opp'n Ltr. 1), but contend that it was only after Halstead inspected "the recording instruments" that he learned in July 2013, that Defendants "had committed fraud by executing false affidavits attesting to their compliance with required posting rules." (*Id.*) Plaintiffs argue that because of the fraudulent concealment, the "limitations period should be tolled" until Plaintiffs' discovery of the fraudulent affidavits in July 2013. (Am. Compl. ¶ 14; Pl. Opp'n Ltr. 1.)

The statute of limitations for claims brought pursuant to Section 1983 is determined by state law and, in New York, the statute of limitations for Section 1983 claims arising in New York is three years. *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995) (citing *Owens v. Okure,* 488 U.S. 235, 250–51 (1989)). "While state law supplies the statute of limitations for claims under Section 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)); *see also Pendleton v. Goord*, 849 F. Supp. 2d 324, 329 (E.D.N.Y. 2012) ("The limitations period begins to run, or accrue, when the plaintiff knows or has reason to know of the injury which is the basis of his action.") Plaintiffs do not dispute that that the three year statute of limitations applies, however, they argue that it should be tolled because of Defendants' fraudulent actions.

---

[9] Plaintiffs state inconsistently in the Amended Complaint that the deed was recorded on January 6, 2011, (Am. Compl. ¶ 1), and January 11, 2011, (Am. Compl. ¶ 14). In a letter dated March 10, 2014, Plaintiffs state that the deed was recorded on January 11, 2013. (Pl. Opp'n Ltr. 2.) Regardless of which of the three dates the deed was recorded, Plaintiffs' action is time-barred.

(Pl. Opp'n Ltr. 1–2.) Because the Property was sold at auction on or about March 11, 2009, and because Plaintiffs commenced this action on August 29, 2013, more than four years after the auction of the Property, unless Plaintiffs can demonstrate that they are entitled to equitable tolling of the statute of limitation, the action is time-barred.

### i. Equitable tolling doctrine

Section 1983 claims are subject to equitable tolling under certain circumstances. *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (noting that equitable tolling can apply to Section 1983 claims). Whether or not the limitations period should be tolled is determined by state law. *See Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) ("Although federal law determines when a Section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled unless state laws would defeat the goals of Section 1983." (citation and internal quotation marks omitted)).

"[A] litigant seeking equitable tolling must establish two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (quoting *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)); *see also Lozano v. Montoya Alvarez*, 572 U.S. ---, ---, 134 S. Ct. 1224, 1231–32 (2014) ("As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.") "Reasonable diligence is a prerequisite to the applicability of equitable tolling." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012); *Doe v. Holy See (State of Vatican City),* 793 N.Y.S.2d 565, 569 (App. Div. 2005) (stating that "[d]ue diligence on the part of the plaintiff in bringing [an] action is an essential element of equitable tolling . . . [and] the burden is on the plaintiff to

establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational") (citations and quotation marks omitted)); *see also Veltri v. Bldg. Serv. 32B–J Pension Fund,* 393 F.3d 318, 322 (2d Cir. 2004) (stating that equitable tolling "applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances"). Equitable tolling is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Baroor v. N.Y.C. Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)); *see also Covington v. N.Y.C. Police Dep't*, 471 F. App'x 28, 29 (2d Cir. 2012) ("[W]e have applied equitable tolling only in 'rare and exceptional circumstances, where we found that extraordinary circumstances prevented a party from timely performing a required act, and that the party acted with reasonable diligence throughout the period he sought to toll.'" (quoting *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005))); *Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007) ("Equitable tolling applies only in rare and exceptional circumstances." (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000))).

A plaintiff who has been "induced by fraud, misrepresentations or deception to refrain from filing a timely action," can invoke equitable tolling. *Abbas,* 480 F.3d at 641–42 (internal quotation marks and citation omitted); *see also Koch*, 699 F.3d at 157 (citing *Abbas*, 480 F.3d at 642); *Holy See (State of Vatican City)*, 793 N.Y.S.2d at 568 ("Equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." (citations and internal quotation marks omitted)); *Bennett v. U.S. Lines, Inc.*, 64 F.3d 62, 66 (2d Cir. 1995) (Equitable tolling prevents the running of a statute of limitations against a plaintiff "who is unaware that he

has a cause of action *because of* defendant's fraudulent acts or concealment." (emphasis added)); *Bailey v. City of New York*, No.14-CV-2091, 2015 WL 220940, at *9 (E.D.N.Y. Jan. 15, 2015) ("A defendant may be equitably estopped from asserting the statute of limitations as a defense 'in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit.'") "[W]hen a defendant fraudulently conceals the wrong, the time [limit of the statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of the action." *Pinaud*, 52 F.3d at 1157–1158 (citing *Keating v. Carey,* 706 F.2d 377, 382 (2d Cir. 1983)). However, to take advantage of this doctrine, a plaintiff must submit non-conclusory evidence of a conspiracy or other fraudulent wrong which precluded his possible discovery of the harm suffered. *Id.* (citing *Dory v. Ryan,* 999 F.2d 679, 681 (2d Cir. 1993)); *Perry v. City of Stamford,* 996 F. Supp. 2d 74, 83 (D. Conn. 2014) (same).

The equitable tolling doctrine considers not just when a plaintiff discovered the fraud, but also when a plaintiff "by the exercise of reasonable diligence should have discovered" the fraud. *Pinaud*, 52 F.3d at 1157–1158. Thus, "the equitable estoppel doctrine is not available to a plaintiff who possesses timely knowledge sufficient to place him or her under a duty to make and ascertain all the relevant facts prior to the expiration of the applicable statute of limitations." *Gonzales v. Nat'l Westminster Bank PLC*, 847 F. Supp. 2d 567, 572 (S.D.N.Y. 2012) ("Because the [plaintiffs] were on notice of the alleged fraudulent misconduct long before the expiration of the applicable statutes of limitations, . . . they may not claim the benefits of equitable tolling under the doctrine of fraudulent concealment.") (citing *Malone v. Bayerische Hypo–Und Vereins Bank,* No. 08–CV–7277, 2010 WL 391826, at *11 (S.D.N.Y. Feb. 4, 2010))).

The test as to when fraud should have been discovered with reasonable diligence is an objective one. *Guilbert v. Gardner,* 480 F.3d 140, 147 (2d Cir. 2007). "Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Id.* (quoting *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983)).

### ii. Plaintiffs are not entitled to equitable tolling

Plaintiffs filed the initial Complaint in this action on August 29, 2013, (Docket Entry No. 1), and an Amended Complaint on March 7, 2014, (Docket Entry No. 10). Plaintiffs allege that because Defendants filed fraudulent affidavits about the notice of the auction of the Property and concealed the fraud, Plaintiffs could not have discovered the fraud until July 2013 when they "received notice that the deed had been recorded," and equitable tolling should therefore toll the statute of limitations. (Am. Compl. ¶ 14; Pl. Opp'n Ltr. 1.) Plaintiffs allege that Itty falsely stated in an affidavit, which was submitted in the State Court Action, that he posted the required auction notices at the United States Post Office located at 271 Cadman Plaza East, Brooklyn, New York, the King's County Clerk's Office at 360 Adams Street, Brooklyn, New York, and the Sheriff's Office at 210 Joralemon Street, Brooklyn, New York, and falsely stated that he posted those notices 56 days in advance of the auction. (Am. Compl. ¶¶ 9–12; Itty Aff. 1.) Plaintiffs also allege that Pucito falsely claimed in his affidavit filed in the State Court Action that "all procedures regarding notice were properly followed." (Am. Compl. ¶ 12.) Plaintiffs further allege that the deed transferring the Property to Felice was recorded on or about January 6 or 11, 2011, or January 11, 2013, (Am. Compl. ¶ 14; Pl. Opp'n Ltr. 1), and that they did not learn of the

10

fraud until on or about July 12, 2013. (Am. Compl. ¶ 14.) Accepting these allegations as true, Plaintiffs have failed to allege any plausible non-conclusory facts from which the Court could conclude that Plaintiffs were pursuing their rights diligently and that "some extraordinary circumstance" stood in their way and prevented them from timely challenging the alleged notice deficiencies.

The very documents Plaintiffs rely on to argue tolling demonstrate that in 2009, Plaintiffs knew of the affidavits that contained the alleged notice deficiencies. With the exercise of reasonable diligence, Plaintiffs should have discovered any alleged deficiencies contained in those affidavits, or at the very least, Plaintiffs had a duty to determine the facts. Plaintiffs complained of improper notice in the State Court Action they commenced in 2009, and attempted "to prevent the auction from going forward on the ground that various due process errors deprived Halstead of the notice required to auction away the property at issue." (October 15, 2010 State Court Decision 3.) Thus, Plaintiffs were aware of the alleged notice deficiencies. The affidavits that Plaintiffs now allege contain fraudulent information were filed in the State Court Action commenced by Plaintiffs. Plaintiffs therefore had actual knowledge of the alleged fraudulent documents that now form the basis of their claims. Even assuming Plaintiffs did not know that the affidavits contained the alleged fraudulent information, the affidavits themselves, one of which Plaintiffs allege was improperly signed by Lucas and notarized by Lucas, created a duty on the part of Plaintiffs to inquire further and determine any relevant facts. S*ee Facciolo v. City of New York*, No.-09-CV-1332, 2010 WL 3155251, at *7 (E.D.N.Y. Aug. 6, 2010) ("The record makes clear that at the time of the indictment in March 2005, the basic facts underlying plaintiffs' current *Monell* claim were, if not actually known to plaintiffs, easily discoverable, and thus the claim accrued at this time."); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d

11

Cir. 2002) (finding that knowledge of the basic facts underlying a Section 1983 cause of action triggers accrual, even if the plaintiff obtains more persuasive evidence later on).

Moreover, Plaintiffs do not explain their delay in investigating the alleged fraudulent affidavits and therefore cannot demonstrate that they have been diligently pursuing their rights or that some extraordinary circumstance prevented them from timely commencing this action. The auction took place in 2009. (Am. Compl. ¶ 9.) Plaintiff Halstead participated in the auction.[10] (October 15, 2010 State Court Decision 3.) Judge Schmidt ordered Defendants to issue a deed to Felice in June 2009. (June 9, 2009 State Court Decision 1.) Plaintiffs have not asserted any reason for their delay in bringing this action, other than to state in a conclusory manner that the

> fraudulent activities . . . were not discovered until [Defendants] recorded a deed on or about January 11, 2013. Plaintiff[s] [were] unable to discover the affidavits — which defendant's [sic] concealed — until [they] received notice that the deed had been recorded. Upon his inspection of the recording instruments, Dwight Halstead . . . learned in July 2013, that [D]efendants had committed fraud by executing false affidavits attesting to their compliance with required posting rules.

(Pl. Opp'n Ltr. 1.) Accepting all of these conclusory allegations as true, they nevertheless fail to provide an explanation of why Plaintiffs, with reasonable diligence, could not have discovered any alleged fraudulent information in the affidavits in 2009 when they were filed. Nor do Plaintiffs explain what information, if any, in the recording instruments led to the discovery of the alleged fraudulent information in the affidavits, or why such information could not have been discovered with reasonable diligence in 2009. *See Pinaud*, 52 F.3d at 1158 ("Moreover, even if

---

[10] In the June 9, 2009 State Court Decision, Judge Schmidt determined that by participating in the auction, Plaintiffs waived any challenge to the notice procedures. (June 9, 2009 State Court Decision 1.) Defendants argue that Plaintiffs' claims in this proceeding are precluded by the *res judiciata* doctrine in light of the June 9, 2009 State Court Decision. The Court declines to consider this or any of Defendants' other arguments in support of their motion to dismiss, in view of the Court's determination that this action is time-barred.

we were to conclude that [the plaintiff] had sufficiently alleged a conspiracy that served to fraudulently conceal [defendant's] wrongs against him, he has not indicated why 'by the exercise of reasonable diligence,' he was unable to 'discover' the wrongs against him after June of 1988.") Plaintiffs have not established that they acted with "reasonable diligence" or that any "extraordinary" circumstance stood in their way and prevented them from timely filing this action. Thus, Plaintiffs are not entitled to equitable tolling. Accordingly, the action is time-barred. The Court grants Defendants' motion to dismiss the Amended Complaint.

**II. Conclusion**

For the reasons discussed above, the Court grants Defendants' motion to dismiss the Amended Complaint. The Clerk of Court is directed to close this case.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 31, 2015
 Brooklyn, New York

13